IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KEVIN DUANE TALKINGTON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:17-CV-741-O |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Kevin Duane Talkington, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. BACKGROUND**

On February 6, 2014, a jury in Tarrant County, Texas, Case No. 1269829D, found Petitioner guilty on three counts of aggravated sexual assault of Jane,[1] a child under 14 years of age, and two counts of indecency with Jane by contact, Petitioner pleaded true to the repeat-offender notice in the indictment, and the trial court assessed his punishment at 40 years' confinement for each count of aggravated sexual assault and 15 years' confinement for each count of indecency with a child. Clerk's R. 79-89, ECF No. 22-10. Petitioner's convictions were affirmed on appeal, and the Texas

---

[1]The state appellate court referred to the child by Jane, a pseudonym, to protect her identify, as does this Court. Mem. Op. 2 & n.2, ECF No. 22-3.

Court of Criminal Appeals refused his petition for discretionary review. Docket Sheet 1-2, ECF No. 22-2. Petitioner also challenged his convictions in three postconviction state habeas-corpus applications.[2] The first two were denied by the Texas Court of Criminal Appeals on the findings of the trial court and the third was dismissed as a subsequent application under Texas Rule of Criminal Procedure article 11.07, § 4. SHR02, SHR03 & SHR05,[3] ECF Nos. 22-24, 22-27 & 22-32; Actions Taken, ECF Nos. 22-19, 22-26 & 22-30. This federal habeas-corpus petition followed.

The facts of the case were summarized by the state appellate court as follows:

> In January 2011, Jane, [Petitioner]'s eleven-year-old stepdaughter, made an outcry of sexual abuse to CPS investigator Jennifer Abbott. Jane told Abbott that [Petitioner] had "touched her privacy spot with his tongue, . . . licked her chest, . . . put her on top of the washer and . . . laid on top of her and kissed her and that one time in the shower that he pulled the curtain back [and] told her to bend over and shake her tushy." Following this interview, Abbott took Jane to Alliance for Children, where Jane told forensic interviewer Joy Hallum that Talkington had "put[] his mouth onto her vagina, touch[ed] her vagina with his hands, put[ ] his penis to her anus, put[ ] his penis to her vagina, and then [had] her put her mouth onto his penis."

> At trial, [Petitioner] objected to the "outcry" testimony of both Hallum and Abbott. Specifically, [Petitioner] argued that Abbott's testimony was unreliable and Hallum's testimony should be limited to discussing the specific acts that Abbott did not describe. The trial court held an outcry hearing and, after listening to the testimony, overruled the objection.

> In addition to hearing Hallum's and Abbott's testimony, the jury also viewed the video of Hallum's forensic interview with Jane and heard testimony from Jane herself. Jane testified at length, describing several instances in which [Petitioner] had touched her inappropriately. Jane told the jury that [Petitioner] placed his hands and mouth on her breast and then moved his hands to her vagina. She testified that another time [Petitioner] had put his mouth on her vagina. Jane also described another instance in which [Petitioner] placed his mouth and hands on her vagina and

---

[2] The second application was actually a supplement to the initial application for purposes of adding an additional ground for relief. SHR03 9, ECF No. 22-27.

[3] "SHR02" refers to the record of Petitioner's state habeas proceeding in WR-86,063-02; "SHR03" refers to the record of his state habeas proceeding in WR-86,063-03; and "SHR05" refers to the record of his state habeas proceeding in WR-86,063-05.

then engaged in anal sex with her. Lastly, Jane told the jury that [Petitioner] made her put her mouth on his penis. She testified that while the anal sex only happened once, the touching with his hands and mouth happened often.

Mem. Op. 2-3, ECF No. 22-3.

## II. ISSUES

In sixteen grounds for relief, Petitioner's claims fall within the following general categories: (1) due process (grounds two, five, seven, and eight); (2) abuse of discretion (ground ten); (3) ineffective assistance of counsel (grounds one, three, four, six, nine, eleven, twelve, and thirteen); and (4) defective indictment (grounds fourteen, fifteen, and sixteen). Pet. 6-7, 11-18, ECF No. 1.

## III. RULE 5 STATEMENT

Respondent asserts that Petitioner's ineffective-assistance-of-trial-counsel claim that counsel failed to object to errors in the court's charge under category (3) and his defective-indictment claims under category (4) are unexhausted and procedurally barred from the Court's review because they were not raised in state court. Resp't's Answer 9-13, ECF No. 20. She does not otherwise assert that the petition is successive or barred by the federal statute of limitations.

## IV. EXHAUSTION

Petitioners seeking habeas-corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas,* 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state. *O'Sullivan v. Boerckel,* 526 U.S. 838, 842-48 (1999); *Fisher,* 169 F.3d at 302; *Carter v. Estelle,* 677 F.2d 427, 443 (5th Cir. 1982). In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals. *Richardson v. Procunier,* 762 F.2d 429, 431-32 (5th Cir. 1985). Therefore, a Texas prisoner

may satisfy the exhaustion requirement by presenting both the factual and legal substance of a claim to the Texas Court of Criminal Appeals in either a petition for discretionary review or a state habeas-corpus proceeding pursuant to article 11.07 of the Texas Code of Criminal Procedure in a procedurally proper manner. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West 2015); *Depuy v. Butler,* 837 F.2d 699, 702 (5th Cir. 1988).

Contrary to Respondent's assertion, a review of the state court records reveals that Petitioner's ineffective-assistance claim was raised in his second state habeas application, which was considered by the state courts. SHR03 7, ECF No. 22-27. Consequently, the claim is addressed in this opinion to the extent it was exhausted in state court.

A review of the record also reveals that Petitioner raised his defective-indictment claims under grounds fourteen, fifteen, and sixteen in his third state habeas application, which was dismissed as a subsequent application by the Texas Court of Criminal Appeals. SHR05 7-11, ECF No. 22-32. A state prisoner is procedurally barred from obtaining federal habeas review of a claim raised in a state habeas application that was dismissed as subsequent, absent a showing of cause for failing to raise the claim in an initial state habeas application and prejudice or a showing that he is actually innocent of the crime(s) for which he stands convicted. *See Sawyer v. Whitley,* 505 U.S. 333, 338 (1992)*; Ylst v. Nunnemaker,* 501 U.S. 797, 801-07 (1991); *Smith v. Johnson,* 216 F.3d 521, 523-24 (5th Cir. 2000). Petitioner provides no excuse for his failure to properly exhaust the claims in state court nor has he asserted, much less made a convincing showing, of actual innocence. In his state habeas application, Petitioner explained that he did not raise the claims in his first state application because the "errors and claims were unknown to [him] at the time of his previous filing, therefore could not have been raised." SHR05 5, ECF No. 22-32. However, Petitioner's ignorance

of the law or the legal significance of certain facts does not constitute cause for excusing the procedural default. *See Saahir v. Collins,* 956 F.2d 115, 118 (5th Cir. 1992). Consequently, his claims under grounds fourteen, fifteen, and sixteen are procedurally barred from this Court's review.

## V. PROCEDURAL DEFAULT

Under grounds seven, eight, and ten, Petitioner claims that his right to due process was violated because the state produced evidence of an extraneous offense and made improper closing argument and because the trial court abused its discretion in "admitting the cumulative hearsay evidence" of the CARE Team nurse Brenda Crawford. Pet. 12-13-14, ECF No. 1. Although raised in his state habeas application, the state habeas court found that these record-based claims could have been raised on direct appeal, but were not, and thus were forfeited. SHR02 218, 226, ECF No. 22-25. The Texas Court of Criminal Appeals has repeatedly held that claims that could have been raised on direct appeal, but were not, may not be raised for the first time in a state habeas petition. *See Ex parte Gardner,* 959 S.W.2d 189, 199-200 (Tex. Crim. App. 1998). Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Ylst,* 501 U.S. at 802-04; *Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Fisher,* 169 F.3d at 300. "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain,* 128 F.3d 900, 902 (5th Cir. 1997).

The state court clearly relied upon firmly established and regularly followed state procedural rules to recommend denial of these claims. *See Aguilar v. Dretke,* 428 F.3d 526, 535 (5th Cir. 2005); *Ex parte Banks,* 769 S.W.2d 539, 540 (Tex. Crim. App.1989) (holding "the Great Writ should not be used to litigate matters which should have been raised on appeal"). Therefore, absent a showing

of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, the claims are procedurally barred from this court's review. *See Coleman,* 501 U.S. at 750.

## VI. DISCUSSION

### A. Standard of Review

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102. Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

In this case, the state habeas court adopted the state's proposed findings of fact and conclusions of law relevant to Petitioner's claims and the Texas Court of Criminal Appeals adopted those findings in denying relief. Petitioner has failed to rebut the presumptive correctness of the state courts' factual findings with clear and convincing evidence; thus, this Court applies the presumption

of correctness to those findings, including the court's credibility findings, in considering Petitioner's claims.[4] *See Richards v. Quarterman,* 566 F.3d 553, 563-64 (5th Cir. 2009); *Galvan v. Cockrell,* 293 F.3d 760, 764 (5th Cir. 2002).

### B. Due Process

Under grounds two and five Petitioner claims that, in violation of due process, the trial court failed to "fully instruct the jury on the law [and] required elements of the charged offense" in counts two and three of the indictment and to "give a specific unanimity instruction" as to each count in the indictment.[5] Pet. 6, 11, ECF No. 1. To warrant federal habeas relief on the basis of a violation of due process due to an error in the trial court's instructions to the jury, a court must find that the jury-charge error rendered the entire trial fundamentally unfair. *See Thompson v. Lynaugh,* 821 F.2d 1054, 1060 (5th Cir. 1987) (citing *Henderson v. Kibbe,* 431 U.S. 145, 154-55 (1977)). It is not enough to argue that the instruction was undesirable, erroneous, or universally condemned.

The state habeas court found that the jury charge "discussed the elements of aggravated sexual assault of a child under fourteen years of age in the application paragraphs"; "charged the jury on five separate acts and required five separate verdicts"; and "required that the jury 'unanimously agreed upon a verdict.'" SHR03 22-23, ECF No. 22-27. Based on its findings, the state court concluded that "the application paragraphs properly applied the law to the facts" and the jury charge

---

[4]In his first state habeas proceeding, Petitioner submitted the affidavits of various family members providing that Jane often lied to get her siblings in trouble; that Jane loved Petitioner and showed affection toward him; that Petitioner could not have committed the offenses without being seen or heard by someone in the household; that Jane confided in them that the alleged events did not happen; and that they would have been willing to testify on Petitioner's behalf. SHR02 35-39, ECF No. 22-24. The state habeas court impliedly found that the affidavits lacked credibility.

[5]Respondent contends that these "record claims" are procedurally defaulted because they could have been, but were not, raised on direct appeal. Although that is true, the state habeas court considered the claims on the merits and did not expressly recommend denial of the claims on that basis. SHR02 225-26, ECF No. 22-25.

"properly instructed the jury that its decision must be unanimous." *Id.* at 31. Petitioner fails to establish that the instructions were improper under state law, much less that the charge rendered his entire trial fundamentally unfair.

### C. Ineffective Assistance of Counsel

Under grounds one, three, four, six, nine, eleven, and thirteen, Petitioner presents a laundry list of ineffective-assistance-of-trial-counsel claims, which include the following:

(1) counsel failed to challenge or strike a biased juror, Mr. Nygaard;

(2) counsel failed to investigate and interview witnesses–specifically, his parents C.M. and H.M., his daughters C.T. and M.M., Jane's mother C.S., and his friend Terry Kutch; failed to file a motion for discovery; failed to obtain Jane's medical records, the CPS reports, and the grand jury testimony of outcry witness Lisa Parker; and failed to consult any medical experts for the defense or interview the state's medical experts;

(3) counsel failed to interview and present C.S. as an alibi witness;

(4) counsel failed to impeach Jane with prior inconsistent statements;

(5) counsel failed to interview or call C.T. and M.M. and to make an opening statement;

(6) the cumulative effect of counsel's errors prejudiced him; and

(7) counsel failed to object to errors in the trial court's charge on guilt/innocence.

Pet. 6-7, 11-16, ECF No. 1.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). *See also Styron v. Johnson,* 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective-assistance claims against appellate counsel). An ineffective-assistance claim

is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel under this standard, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial or appellate strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance-of-counsel claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100-01 (quoting *Williams,* 529 U.S. at 410)); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Petitioner raised his claims in his first two state habeas applications, and the state habeas judge, who also presided at trial, conducted a hearing by affidavit. Trial counsel, Lex Johnston, responded to Petitioner's allegations in an affidavit, in relevant part, as follows (all grammatical and/or punctuation errors are in the original):

> Having been ordered by this Court to address each individual allegation stated in the Writ, I offer the following facts, which are from a combination of my

independent recollections about the events that occurred during this time period, a review of my personal notes, and a review of the Clerk's and Reporter's Records.

**Ground One:** Ineffective assistance of counsel: Trial counsel failed to strike or challenge for cause a biased juror.

[Petitioner] alleges that I was ineffective for failing to challenge venireman number 36 for bias. Apparently, [Petitioner] believes that I should have objected to this person adding additional information ("Trial counsel made no objection to Mr. Nygaard's request, nor did counsel ask why he wanted to change his answer.") Venireman 36 unequivocally stated that he could be impartial, therefore it would have been frivolous for me to have challenged him for cause.

I could have used a peremptory challenge, but there were others that I felt that were worse that needed to be struck. After the conclusion of voir dire, I discussed the strikes that I would make, and [Petitioner] signed the strike sheet (under seal in court's file) indicating his agreement and concurrence with my strikes. It is my custom to discuss the strikes with my client and to ALWAYS have the client participate in the process and ALWAYS have the client sign the strike sheet to indicate his concurrence.

**Ground Three:** Ineffective Assistance of Counsel: Failure to investigate and adequately prepare for trial.

[Petitioner] makes several assertions in this Ground. The first is that he alleges that I never spoke with his parents, [C.M.] and [H.M.], [C.T.], [M.M.], or [C.S.] prior to trial. While it is true that I did not speak with [C.T.] or [M.M.] prior to trial, I do not feel as if either of those people could have provided me with relevant, trustworthy information about this case. While both have now provided affidavits that espouse the exculpatory evidence that they say they could have provided, these statements are still unbelievable. [C.T.] was 13 years old when she signed her affidavit in February 2016. This would have made her 11 years old at the time of the trial and about 5 years old at the time of the alleged offense. While her current statement that "on two separate occasions, [Jane] confided in me that the alleged events did not happen" is nice, in my professional opinion, it would have been inadmissible in the trial under the Texas Rules of Evidence. Based upon my discussions with [Petitioner], I was aware of this witness and what limited information she could provide.

I also made the decision not to speak with [M.M.]. In my opinion, she could do nothing to help with the defense. If her testimony was to be used, it was to show that she was a liar, no matter what she testified about. She is the person who initiated this case in the first place by reporting that the [Petitioner] was "messing" with [Jane]. [M.M.] has provided an affidavit as well. Her statements that "[Petitioner]

couldn't have assaulted [Jane] without being seen or heard because there was at least five other people in the house most of the time" would mean that she was lying to Investigator Abbott when she initially reported the abuse in the house or that she is lying now. In the end, [M.M.] wasn't even in the household at the time the offenses were alleged to have occurred, so anything she had to say would not have been relevant to the facts of the case.

As for [C.S.] and [Petitioner's parents], I understand that they have all provided affidavits. I feel for them, but their desire to assist their loved one does not make it proper for them to lie. I spoke to [C.S.] on more than one occasion both before and after [Jane]'s diary was delivered to me. Had she not answered the questions in direct examination the way she did, I was prepared to extensively cross examine[] her, but when she ended her testimony with stating that she didn't believe her own daughter about the allegations, I decided that there was nothing else that I could accomplish with her. Her affidavit states that "[Petitioner] was always in my sight" and other allegations that would make it impossible for him to have committed the offense, but her testimony at trial clearly states that there WAS at least one instance where he was alone with [Jane] at night while C.S. was asleep and awakened by a frightened and crying child which caused her to make sure that the children were never alone with him again.

[Petitioner's parents C.M. and H.M.] are clearly upset that their son has been convicted and sentenced to prison for a long time. Both provided [Petitioner] with affidavits that state that I never spoke to them before the trial and that I made statements to them during the trial about punishment. The statement by H.M. that "Mr. Johnston told me that [Petitioner] would only get fifteen years and do only half of that" makes it pretty clear that they either do not know the truth or will say anything that they believe will help their son. The bare minimum that [Petitioner] could have been assessed was 15 years and this Court knows that it is virtually unheard of that someone would get the minimum. And, the chance of any person convicted of a 3g offense like this getting out on the first parole hearing is also not likely to happen. I have never told anyone that they would get the minimum in a trial like this and I certainly have never told anyone that he would only serve a set amount of time. I spoke with both [parents] on more than one occasion from the beginning of my representation through trial. I called both of them as witnesses during the trial and if I had not discussed the case with them ahead of time, I would not have known what questions I wanted to ask. As for not calling either of them as witnesses during the punishment phase, I did explain to them that if they did not acknowledge that the jury found the [Petitioner] guilty and tell the judge that they accepted that judgment, it would not do any good. Both of them wanted to tell the court that he was innocent and I made the decision not to present that evidence.

In his second allegation, [Petitioner] alleges that I drafted a motion for discovery but failed to file it with the court. That is true. I am satisfied that I received

all discovery items that I am entitled to receive and filing the motion and, even getting the motion granted, would not have gotten me any additional evidence.

In his third allegation, [Petitioner] alleges that I did not receive medical records (SANE examination) until 5 days prior to the trial. There is nothing in the report that surprises me and nothing to indicate that anything in the report would have been helpful to his defense.

In his fourth allegation, [Petitioner] alleges that Lisa Parker testified at the grand jury and that the state's two witnesses used in trial were not proper outcry witnesses. He may have forgotten that I objected to the state's outcry witnesses.

In his fifth allegation, [Petitioner] alleges that I failed to interview any of the state's witnesses before trial and that I did not consult with any medical experts. I have interviewed and cross-examined Joy Hallum, Brenda Crawford, and Jennifer Abbott on numerous occasions and know how they will answer questions. I had their reports and knew that they would testify as they would in their reports and I knew what areas I could and could not challenge them. There was no reason to obtain a medical expert in a case like this.

In his sixth allegation, [Petitioner] alleges that my only investigation into his case was my "brief" conversations with him and reviewing the state's file. As evidence of this, he provided the court with a copy of my invoice. I admit that I have never annotated every single thing that I have done on a case. Until now, I have never seen the need to document every time I pick up the telephone to have a 30 second conversation or think about a case. I have never intended to get rich by accepting court appointments. I changed my college major from accounting because I don't like to keep track of every detail, but, thanks to [Petitioner], I will start. [Petitioner] also alleges that the wording on my billing statement should be considered to be Gospel of what exactly I did on his case. I hate to disappoint, but my calendaring and accounting software that I used at that time was designed for larger firms and most of the events (which had to be created in the software) are generalizations and, frequently, are hints for me to know what is going on. For example, when the event "File Subpoena" comes up, it is automatically generated a set number of days following the event "Status Conference." It is a hint for me to file subpoenas if I have them AND to check the clerk's file to see what subpoenas have been filed by the state. According to my billing statement, I never actually got the medical records or any of the state's motions because none of those things are mentioned in my bill.

**Ground Four:** Ineffective Assistance of Counsel: Failure to interview and present [Petitioner]'s alibi witness

[Petitioner] alleges for a second time that I never interviewed [C.S.]. He alleges that she was his alibi witness and that I didn't cross-examine her about the

alibi. As stated before, I did speak with [C.S.]. I also spoke with [Petitioner] at great length about the term "on or about" when it is used in an indictment alleging a crime against a child. His desired alibi, as I told him numerous times, was not believable. [C.S.] testified that there was, in fact, times when he WAS alone with the children when people were asleep. Having her then testify that there was never a single time that he was not in her sight when children were in the house would have gone over like the proverbial lead balloon. His mother testified about the unlikelihood of this happening because of her illness and his father testified about it when he said that he never heard anything like crying or arguing or anything else while he was asleep.

**Ground Six:** Ineffective Assistance of Counsel: Failure to impeach state witness, [Jane], with prior inconsistent statements.

In my professional opinion, I believe that the testimony of others related to different stories and different versions of the stories is more effective than cross examining a child over it. I made the tactical decision to allow the record to speak to the jury about her credibility.

**Ground Seven:** Trial counsel failed to request an instruction to disregard [C.S.'s] testimony regarding [Petitioner]'s previous incarceration

I did not believe that this extraneous offense testimony was important and the more that I made a big deal about it, the more the jury, in my opinion, would make a big deal about it especially because I know that this was not egregious enough to even come close to creating a mistrial.

**Ground Eight:** Due process violation; State's closing argument injected new facts into the record and the court abused its discretion in overruling the related objections.

While this is mainly about the court's error, [Petitioner] also alleges that "counsel failed to request a mistrial" and that "counsel failed to object to this instant statement." I know that many, many things in closing argument are, arguably, objectionable. However, in my professional opinion, objecting too many time[s] over nit-picky things, regardless of whether they could possibly be sustained, during closing argument is counter-productive. I made the tactical decision to leave some things alone in order to not get into a "objection contest" with the prosecutor, which would result in objections during my closing argument that would negatively affect my client.

**Ground Nine:** Ineffective Assistance of counsel: failure to present two critical witnesses and make opening statement

[Petitioner] explains that I failed to call [C.T.] as a witness to state that [Jane]

had recanted her story. He explains in his "Facts Supporting Ground" that I told him that the testimony would be inadmissible and that I refused to call this witness despite his objections. At least part of that is true. I did refuse to call [C.T.] as a witness. I did tell him that the testimony would be inadmissible. He did not object at that point, but even if he did, I made the decision to call the witnesses that I chose to call.

[Petitioner] again alleges that I failed to interview or call [M.M.] as a witness. As previously stated. I made the decision to not call her as a witness because any statement that she made to benefit [Petitioner] would have been a statement that she, herself, was a liar.

[Petitioner] also complains that I did not make an opening statement. I frequently do not.

**Ground Eleven:** Cumulative Error: Denial of due process due to cumulative error making trial fundamentally unfair

[Petitioner] alleges that the cumulative effect of his prior complaints, if they had merit, constitute a denial of his right to a fair trial. I reiterate the previous answers.

Further, in [Petitioner]'s affidavit, he indicates that I "discredited [his] only witness by introducing his criminal history and calling him a 'liar by profession.'" This is true. As the court is now aware, I represented Mr. Kutch on many of his prior felony offenses, all of which were crimes of moral turpitude. Had I not talked about his prior criminal record, the state certainly would have and I would have been the one discredited. When I have a witness with a past, including my own client, I will bring out everything possible that could be used to impeach him because I believe that it is better for a person to admit that they've had problems ahead of time than to have the District Attorney come back and ask "are you the same person convicted of theft on such and such date?" Mr. Kutch new that this was going to happen because he and I discussed the attorney client relationship and what I could and couldn't do without his express consent.

[Petitioner] and the affiants that he has provided do not seem to remember the facts of the case and are grasping at straws in an effort to gain his release. With the exception of [C.T.] and [M.M.], their testimony at trial actually helped to convict the [Petitioner]. While they swear, in their affidavits, as to what they would have testified, they failed to mention what the[y] said when they DID testify. While I would have hoped for a different outcome, the testimony of his family, in my opinion, is what truly doomed him.

SHR02 164-70 (emphasis in original) (record citation omitted).

Based on counsel's affidavit, which the court found credible, the documentary record, and his own recollection of counsel's performance at trial, the state habeas court entered factual findings, too numerous to list here, consistent with counsel's affidavit and/or supported by the record, which were later adopted by the Texas Court of Criminal Appeals. SHR03 16-22, ECF No. 22-27. Based on those findings, and applying the *Strickland* standard, the state habeas court concluded that Petitioner had failed to prove that counsel's representation was deficient or that but for counsel's acts or omissions there was a reasonable likelihood that the outcome of his trial would have been different. *Id.* at 26-30.

Relying on the presumptive correctness of the state courts' factual findings, and having independently reviewed Petitioner's ineffective-assistance-of-trial-counsel claims in conjunction with the state court records, the state courts' application of *Strickland* was not objectively unreasonable under the doubly-deferential standard applied to such claims. Petitioner's claims are largely conclusory, with no legal and/or evidentiary basis, refuted by the record, involve strategic and tactical decisions made by counsel, or would have required counsel to make frivolous requests, motions, or objections, all of which generally do not entitle a state petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (providing strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Charles v. Thaler,* 629 F.3d 494, 502 (5th Cir. 2011) (providing counsel's decision not to object to adverse witness testimony was not an unreasonable trial strategy when doing so would draw undue attention to that harmful testimony); *Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002) (providing counsel is not required to make futile motions or frivolous objections); *Evans v. Cockrell,* 285 F.3d 370, 377 (5th Cir. 2002) (providing petitioner must "bring

forth" evidence, such as affidavits, from uncalled witnesses, including expert witnesses, in support of an ineffective-assistance claim); *Green v. Johnson,* 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue"); *Teague v. Scott,* 60 F.3d 1167, 1172 (5th Cir. 1995) ( providing counsel's actions during voir dire are considered to be a matter of trial strategy); *Gilliard v. Scroggy,* 847 F.2d 1141, 1147 (5th Cir. 1988) (providing decision whether to make an opening statement is "the essence of a strategic choice"); *Murray v. Maggio,* 736 F.2d 279, 282-83 (5th Cir. 1984) (providing complaints of uncalled witnesses are not favored in federal habeas review and a petitioner must overcome a strong presumption that counsel's decision whether or not to call a particular witness was a strategic one); *Smith v. Maggio,* 696 F.2d 365, 367 (5th Cir. 1983) (providing "[c]ounsel had no duty to file pretrial motion, because the prosecutor established an open file policy that made the filing of discovery motion or *Brady* requests pointless); *Reed v. Vannoy,* 703 Fed. App'x 264, 270 (5th Cir.) (providing counsel is not ineffective for failing to impeach child sexual-abuse victims if impeachment could lead to adverse outcome), *cert. denied,* 138 S. Ct. 564 (2017) . Further, because Petitioner fails to establish separate acts of deficient performance, it necessarily follows that relief is not warranted under a cumulative *Strickland* analysis.

Similarly, Petitioner failed to demonstrate deficient performance by counsel and prejudice on appeal. Under ground twelve, Petitioner claims that his appellate counsel was ineffective by failing to raise one or more of the claims presented in this petition. Pet. 15, ECF No. 1. However, appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins,* 528 U.S. 259, 287-88 (2000). It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken.

*Jones v. Barnes,* 463 U.S. 745, 749 (1983).

Petitioner was represented by Wes Ball on appeal, who responded to Petitioner's allegations

in an affidavit as follows:

> I have received and reviewed an Application for Writ of Habeas Corpus in the
> instant case filed by my former client, [Petitioner]. [Petitioner] claims that he was not
> provided effective assistance of counsel during his appeal. The writ also complains
> of his representation at trial by the Honorable Lex Johnston. I have reviewed briefs
> filed with the Texas appellate courts, the resulting opinions and decisions of those
> courts, my files and notes to assist in my recollection of the events related to
> [Petitioner]'s representation.
>
> . . .
>
> Following my appointment for the appeal, I obtained the trial record which
> consisted of the record of the Tarrant County District Clerk and the official transcript
> of all proceedings prepared by the official court reporter. I read and reviewed these
> records from the trial, making notes of any possible errors as I went along. My review
> of these records identified only one potential trial error that was viable to raise in
> [Petitioner]'s appeal. There were other matters that conceivably could have been
> raised as error had those matters been preserved with an objection and adverse ruling
> by the trial court.
>
> [Petitioner] did correspond with me advising of his desire to raise as an error
> some brief testimony by a witness that he had previously been incarcerated. I had
> seen that testimony during my review of the trial record. . . . I went back and looked
> at the record as I had not identified this as a viable issue to raise on appeal. My
> second review of this issue confirmed my earlier opinion that the error, if any, had
> not been preserved on appeal. I advised [Petitioner] of this problem by letter which
> included a copy of the pages of the transcript that pertained to this issue. I received
> further correspondence from [Petitioner] indicating that he did not agree. I advised
> [Petitioner] that an attorney may not advance a claim that is without legal merit. . .
> .
>
> Under Texas Law, the rules of Appellate procedure and the applicable case
> law have long stood for the proposition that error is not a basis for reversal on appeal
> unless the error is preserved. This requires an objection with an adverse ruling, or if
> the objection is sustained, a request for a curative instruction to the jury with an
> adverse ruling, or if a curative instruction is given, a motion for mistrial. In this case,
> the trial record showed that there was an objection and that objection was sustained.
> There was no further relief requested and thus this possible error was not preserved
> and would not be a viable issue to raise on appeal. Additionally, this type of error,

had it been preserved, is typically considered harmless on appeal where it is not repeated or capitalized on by the prosecution. Neither of these events occurred.

[Petitioner] raises in his "Ground Twelve" a claim of ineffective assistance of Appellant Counsel for failure to present issues on direct appeal. His ground for relief appears to be broken down into subparts. He complains that I did not present on appeal a ground concerning a biased juror. A review of the trial record and my notes indicates that there was no error in jury selection as all of the jury peremptory challenges were agreed to. There was no preservation of any error during jury selection as no complaint was made that was not addressed. Second guessing trial counsel on suitable jurors will not stand as a basis for appeal and fails to consider such matters as trial strategy which is frequently absent from the trial record. Therefore, in my professional judgment, this issue was not an issue that could be raised on appeal and if raised would have been completely without merit.

[Petitioner] next complains that I did not raise as an issue on appeal error in the jury instructions. It appears that in the jury instructions, the offenses of aggravated sexual assault of a child was first defined in the abstract portion of the charge. [Petitioner] appears to be correct in his assertion that the abstract portion of the charge did not include the theories of prosecution set out in Counts 2 and 3 of his indictment. However, those theories were set out in full in the charging or application paragraphs for Counts 2 and 3, correctly requiring all of the essential statutory elements of the offense be found beyond a reasonable doubt before a verdict of guilty would be proper. There was no objection lodged to the jury charge by either party to the lawsuit, nor were there any requested jury instructions proposed. Therefore, no error on this point was preserved. Accordingly, this error falls under Texas Rule of App. Proc. 44.2(b) and would have been disregarded as a point on appeal. It was not ineffective assistance of counsel to raise this as a point of error.

[Petitioner] next complains that I did not raise on appeal a claimed failure that the jury instructions submitted, did not require a unanimous verdict. [Petitioner] points out in his complaint that the instructions direct the jury to certify to their verdict after they have "unanimously agreed upon a verdict." This instruction adequately advised the jury that their verdict must be unanimous. Additionally, there was no objection lodged to the jury charge by either party to the lawsuit, nor were there any requested jury instructions proposed. Therefore, no error on this point was preserved. Accordingly, this error falls under Texas Rule of App. Proc. 44.2(b) and would have been disregarded as a point on appeal. It was not ineffective assistance of counsel to raise this as a point of error.

[Petitioner] next complains concerning inadvertent testimony of a witness, where error was not preserved. I have addressed that issue earlier in this affidavit. His next complaint was for not raising matters he describes injecting new facts into the record. His complaints center on some aspects of the States' final arguments to the

jury. A review of these complaints, as I understand them, do not disclose anything that would have merit as an issue on appeal. The large majority of the arguments for which he complains were within the confines of permissible argument and most of the arguments were made with no objection. Other arguments of which he complains were not preserved by objection and Court ruling. In my professional judgment, none of these arguments rising to the level of a point of error that had any merit on appeal.

[Petitioner] finally complains about the testimony of Sexual Assault Nurse Examiner Crawford. The record showed an objection under Texas Rule of Evid. 403 which was overruled. It is difficult to determine what the point of error is on this issue after reading [Petitioner]'s complaint. The objection that was lodged and overruled was a proper ruling by the Court to the objection that was made and thus was not error. Nurse Crawford did testify concerning statements of the victim made to her pursuant to her examination of the victim. If his complaint is that these statements are hearsay, there was no preservation of this alleged error. If there had been such an objection, the trial court would have properly overruled that objection pointing to the medical diagnosis exception to the hearsay rule set out in Texas Rule of Evidence 803(4) and the substantial body of case law on this issue. Therefore, there was no error here with any merit to be raised on appeal.

Despite there being no error in the matters proposed by [Petitioner], I did manage to find a point of error that I believed had sufficient merit to be raised on his appeal. This point of error concerned the improper admission of outcry testimony. I argued that the allowance of two outcry witnesses to describe the same act of aggravated sexual assault was in violation of the outcry statute. The Court of Appeals on affirming the conviction essentially assumed our point of error was meritorious and affirmed the case finding the error to be harmless error. After the conviction was affirmed in the Court of Appeals, I then proceeded to file a Petition for Discretionary Review with the Texas Court of Criminal Appeals. The Texas Court of Criminal Appeals refused our petition. This decision essentially concluded my representation of [Petitioner] in his direct appeal. It was my professional opinion that there was no Federal Constitutional basis in the error raised on direct appeal, thus making a Petition for Writ of Certiorari to the United States Supreme Court an effort in futility.

My representation of [Petitioner] in his appeal was not ineffective. I provided [Petitioner] with effective assistance of counsel. I am aware of no action that could have been taken that would have changed the outcome of the appeal.

SHR02 123-28, ECF No. 22-24.

Based on counsel's affidavit, which the court found credible, and the documentary record,

the state habeas court entered the following factual findings relevant to the issue:

102.    Hon. Ball read and reviewed the clerk's records and reporter's records in preparation of his brief.

103.    [C.S.] testified twice that [Petitioner] had been incarcerated.

104.    Both defense objections to [C.S.'s] testimony were sustained.

105.    After his objections were sustained, defense counsel did nothing further.

106.    Hon. Ball concluded that any error regarding [C.S.'s] testimony that [Petitioner] had been incarcerated was not preserved.

107.    Mr. Nygaard asserted that he could be impartial.

108.    Defense counsel asked no further questions of Mr. Nygaard.

109.    Hon. Ball concluded that there were no errors during the jury selection that had been preserved.

110.    Defense counsel only objected to the verdict form and requested that the form be reversed.

111.    There was no objection to the jury charge and no requested jury instruction was submitted.

112.    Hon. Ball concluded that no error in the jury charge had been preserved.

113.    The jury instruction charged the jury on five separate acts and required five separate verdicts.

114.    The jury charge required that the jury "unanimously agreed upon a verdict.

115.    Hon. Ball concluded that the jury instruction adequately advised the jury that its verdict must be unanimous.

116.    The State argued that the victim had no reason to lie.

117.    Defense counsel objected the first time the State argued that the victim had no reason to lie, but the objection was overruled.

118.    Hon. Ball did not raise on direct appeal the issue that the State argued that the victim had no reason to lie because he concluded it was within the confines of permissible argument.

119.    Brenda Crawford testified about the victim's history regarding sexual abuse which was taken as part of the medical examination.

120.    Hon. Ball did not raise on direct appeal that Ms. Crawford's testimony was inadmissible hearsay because her testimony was admissible under the medical diagnosis exception.

SHR03 24-26, ECF No. 22-27 (record citations omitted).

Based on its factual findings, which were also adopted by the Texas Court of Criminal Appeals, and applying the *Strickland* standard, the state court concluded that Petitioner had failed to prove that counsel's representation was deficient or that but for counsel's alleged omissions there was a reasonable likelihood that the outcome of his appeal would have been different. *Id.* at 32-34.

Relying on the presumptive correctness of the state courts' factual findings, and deferring to the state court's resolution of state evidentiary matters, the state courts' application of *Strickland* was not objectively unreasonable under the doubly-deferential standard applied to such claims. It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983). Petitioner fails to raise any meritorious claims upon which he would have prevailed on appeal. Prejudice does not result from appellate counsel's failure to assert meritless claims or arguments on appeal. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994).

For the reasons discussed, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. A certificate of appealability is also DENIED.

**SO ORDERED** on this 24th day of January, 2019.

Reed O'Connor

**UNITED STATES DISTRICT JUDGE**